*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

---

SRM, a legally incapacitated individual, by Guardian
and Conservator DAYNA SWIFT,

       Plaintiff-Appellant,

v

MICHAEL STUART LESTER,

       Defendant,

and

ALLSTATE INSURANCE COMPANY,

       Defendant-Appellee,

and

MICHIGAN HEAD & SPINE INSTITUTE, PC,

       Intervening Plaintiff.

UNPUBLISHED
August 07, 2026
9:21 AM

No. 375093
Oakland Circuit Court
LC No. 2021-189992-NI

---

Before: ACKERMAN, P.J., and BAZZI and LIEVENSE, JJ.

PER CURIAM.

    Plaintiff[1] appeals as of right from a stipulated order dismissing this action without prejudice. However, plaintiff substantively contests the trial court's earlier orders denying plaintiff's motion to enforce the settlement and for reconsideration. We affirm.

---

[1] All references to plaintiff solely refer to SRM, a legally incapacitated person, by his guardian and conservator Dayna Swift, because intervening plaintiff, Michigan Head & Spine Institute, PC, is not involved in this appeal.

## I. BASIC FACTS AND PROCEDURAL HISTORY

On October 29, 2020, plaintiff sustained significant injuries in a motor vehicle accident. Plaintiff was a pedestrian walking his bicycle across a road in Southfield, Michigan, when he was hit by a vehicle driven by defendant Michael Lester. Due to the collision, plaintiff required an extended hospital stay and multiple surgeries. He is now legally incapacitated, and he requires 24/7 monitoring and care. His daughter, Dayna Swift, is plaintiff's guardian and conservator. At the time of the accident, plaintiff did not have coverage under a no-fault insurance policy. Consequently, he applied to the Michigan Assigned Claims Plan (MACP) for no-fault benefits. The MACP assigned his claim to defendant Allstate Insurance Company (Allstate).

Plaintiff filed the underlying action in September 2021. As to Allstate, plaintiff sought no-fault benefits, contending that Allstate refused to pay personal protection insurance (PIP) benefits. In December 2022, Allstate paid $50,000 to intervening plaintiff Michigan Head & Spine Institute, PC, a healthcare provider that administered services to plaintiff. Allstate further paid $855 to a law office for guardianship services for plaintiff. Under MCL 500.3172(7)(a), PIP benefits payable by an insurer assigned by the MACP are limited to $250,000, meaning that, after the payments made by Allstate thus far, a total potential liability of $199,145 remained.

Plaintiff and Allstate subsequently engaged in settlement negotiations. In an e-mail dated March 10, 2023, plaintiff's counsel sent a message to Allstate's counsel, indicating that there was a "contingent/tentative settlement," and that plaintiff's counsel had "to make the settlement contingent due to the massive Medicare lien." Specifically, plaintiff's counsel wrote:

> Hey everyone!
>
> It looks like we have a contingent/tentative settlement on this one for the amounts we discussed separately.
>
> I have to make the settlement contingent due to the massive Medicare lien. I will start the reduction process with them and then I plan to file a 3112 motion for distribution approval (I will discuss this with probate however).
>
> So please send me your closing documents when you can and I will let you know if/when I get Medicare approval.
>
> Let me know if [there are] any questions/issues.
>
> Thank you all and enjoy your weekends!

In response, on April 6, 2023, Allstate drafted a proposed release and sent the document to plaintiff's counsel, setting the payment amount at $199,145; the release was unsigned. Plaintiff's counsel replied with a request for "proof as to the amount left on the 250k," which Allstate's counsel indicated they would provide.

On June 1, 2023, plaintiff's counsel proposed a change to the draft of the release, stating:

> Hey there!

Just one minor change, in red and attached.

But I think I need to have a provision in here clarifying the limits. Something along the lines of:

> Allstate Insurance Company and the Michigan Assigned Claims Plan/Michigan Automobile Placement Facility confirm[] that the limits of No Fault coverage are capped, pursuant to statute, at $250,000.00. Defendants have paid medical expenses in this matter, decreasing the cap to $199,145.00. This is the entire remaining limit regarding the subject motor vehicle accident.

With the Medicare lien[] on this one, I just want to be safe. What do you think?

On June 9, 2023, Allstate responded with a revised version of the release, incorporating the proposed change of plaintiff's counsel. On June 28, 2023, Allstate sent a follow-up e-mail, asking plaintiff's counsel about the status of the revised release. That same day, plaintiff's counsel replied via e-mail with additional changes, providing:

> Thank you for sending! So this paragraph is set for [SRM] to agree to. He doesn't have the mental capacity:
>
>> IT IS FURTHER UNDERSTOOD AND AGREED that [SRM] does hereby declare that the injuries he sustained are or may be permanent and progressive and that recovery therefrom is uncertain and indefinite and, in making this release and agreement, it is understood and agreed by [SRM] that he relies wholly upon his judgment, belief, and knowledge of the nature, extent and duration of said injuries, and that no representations regarding the nature and extent of legal liability or financial responsibility of any of the parties hereby released have induced him to make this settlement; that in determining said sum, there has been taken into consideration not only the ascertained injuries, disabilities and damages, but also the possibility that the injuries sustained may be permanent and progressive and recovery therefrom uncertain and indefinite so that consequences not now anticipated may result from this said accident;
>
> Dana Swift is signing off as conservator. With the rest of the language confirming the full policy being paid and nothing else, I think you are protected if we just remove entirely?
>
> Then these additions, as CYA for me:
>
>> IT IS FURTHER UNDERSTOOD AND AGREED that the settlement in this matter includes all past, present and future claims for no-fault benefits, including, but not limited to, medical expenses, replacement services, wage loss benefits, and attendant care benefits, and that the payment of the above noted sum shall satisfy all outstanding medical, attendant care, and replacement service expenses which are being distributed by [SRM] and/or

his attorney(s) to the persons and entities that rendered treatment and/or provided services to Plaintiff for accident related injuries, and that Allstate Insurance Company is discharged from any liability for said expenses by virtue of the payment of this settlement as provided herein and in the Order for settlement and dismissal entered by the Court in this matter, as approved by the Court.

IT IS FURTHER UNDERSTOOD AND AGREED that [SRM] and/or his attorney(s) shall pay the claims of all medical providers, attendant care providers and household service providers that rendered treatment or services as a result of the injuries sustained by [SRM] in the aforementioned accident, including, but not limited to: Lakeland Rehabilitation Center, Oakridge Manor, Meridian, Probate Pro, Northstar Anesthesia, Easter Seal Society, Orlando Law Practice, PC, Detroit Medical Consultants, City of Southfield EMS, Ascension St. John Providence, Dr. Hassan Bazzi, Michigan Wound Care and Hyperbaric Institute, Independent ER Physicians, Michigan Institute of Urology, Pharmacy Specialist, Neuromonitoring—William Beaumont, William Beaumont Hospital (collectively "Providers") out of the settlement proceeds, as approved by the Court, and that [SRM] and his attorney(s) are not aware of any assignment(s) signed by [SRM] wherein [SRM] assigned his right to pursue payment of the Provider's charges directly from Allstate Insurance Company to the Providers. Any separate provider suits pending arising out of the subject motor vehicle collision are excluded from this release.

THE UNDERSIGNED agrees to assume responsibility for any and all outstanding liens, known or unknown, including worker's compensation liens, Medicare liens, Medicaid liens, and medical liens, from the proceeds of this settlement, as approved by the Court. In the event that there are any known or unknown liens, the undersigned agrees to hold harmless the defendants and their heirs, executors, administrators, employees, officers, agents, insurers and assigns for all said liens including costs and expenses, including attorney's fees, incurred as a part of the enforcement of said liens.

What do you think?

On June 29, 2023, Allstate sent plaintiff's counsel a revised release, incorporating the proposed changes, in addition to a proposed order of dismissal. The e-mail stated:

Hi Jake:

Attached please find a revised Release and a Stipulation and Order of Dismissal to review as well. Please take a look and let us know your thoughts. Please return the Stip [sic] & Order with a signature or let us know if we can sign on your behalf.

Additionally, please let us know if you are good with the Release now and if you will be having Ms. Swift sign or if you feel additional changes will be needed.

> I have requested the settlement funds on my end so we can get this wrapped up in short order.

Plaintiff's counsel did not respond to this e-mail. Neither the release nor the stipulated order of dismissal was ever signed.

On July 14, 2023, the Centers for Medicare & Medicaid Services (CMS) sent Allstate a notice of intent to refer its debt to the Department of Treasury or a designated debt collection center. The notice identified an outstanding, past-due amount of $257,031.25 as of July 10, 2023, related to plaintiff as the beneficiary. The notice demanded that Allstate pay in full to avoid referral of the debt to the Department of Treasury. On July 25, 2023, Allstate apprised plaintiff's counsel of the CMS notice and revoked all previous settlement offers on the basis that Medicare/Medicaid were being paid directly, stating:

> [Plaintiff's Counsel],
>
> We were just informed by Allstate that Medicare/Medicaid is requiring Allstate to pay directly to Medicare/Medicaid all remaining funds available under the statutory cap of MCL 500.3172(7)(a). As a result, any previous offers of settlement are hereby revoked as Allstate is being required to pay Medicare/Medicaid directly.
>
> Should you have any questions, please do not hesitate to contact me.

Following Allstate's revocation of its offers, plaintiff moved to enforce the purported settlement under MCR 2.507(G), arguing that the e-mails exchanged represented a meeting of the minds on the essential terms, i.e., payment of the remaining statutory funds to plaintiff in exchange for a dismissal of plaintiff's claims against Allstate. Plaintiff asserted that the agreement was contingent on Medicare's approval to reduce the lien, but plaintiff simultaneously stated that Medicare had since provided its approval to plaintiff. To support the contention that Medicare approved a reduction of the lien, plaintiff presented CMS documentation dated August 10, 2023, after Medicare demanded payment from Allstate and after Allstate rescinded the settlement offer. Allstate responded that there was no meeting of the minds because the conditions precedent to the settlement agreement, which included reduction of the Medicare lien and the trial court's approval of the subject agreement, did not occur before Allstate revoked its settlement offers.

On October 4, 2023, the trial court held a hearing regarding plaintiff's motion to enforce the settlement. Plaintiff's counsel asserted that the reduction of the Medicare lien was finalized before Allstate's settlement revocation, to which Allstate's counsel responded that the only evidence plaintiff presented regarding the Medicare lien was dated August 10, 2023, more than two weeks after Allstate had rescinded its offer. Following the parties' arguments, the trial court denied plaintiff's motion, concluding that there had not been a meeting of the minds. On October 23, 2023, the trial court entered an order denying the motion to enforce the settlement for the "reasons stated on the record."

Plaintiff subsequently moved for reconsideration, reiterating the argument that the e-mails between Allstate and plaintiff's counsel demonstrated a meeting of the minds that was enforceable as a settlement under MCR 2.507(G). The trial court dispensed with oral arguments, and on December 7, 2023, the trial court entered an order denying reconsideration. The court opined:

In this case, there is evidence that the parties were discussing and exchanging settlement proposals. Throughout their communication, the parties refer to the settlement as "contingent/ tentative" due to a Medicare lien. While the parties continued to discuss the settlement exchanging proposed additions and modifications, Plaintiff cannot identify a writing memorializing a final settlement agreement that was accepted by both parties. Instead, Defendant cites to an email dated July 25, 2023, in which Defendant informs Plaintiff that "any previous offers of settlement are hereby revoked." Based on the same, the Court cannot conclude that the parties entered into a binding settlement agreement.

After reviewing the motion, it is clear that it presents the same issues previously considered by the Court. While Plaintiff's arguments demonstrate that [plaintiff] disagrees with the Court's ruling, they do not demonstrate palpable error. Simply, Plaintiff has failed to demonstrate a palpable error by which the Court and the parties have been misled and show that a different disposition of the motion must result from correction of the error.

Following entry of this order, the present appeal ensued.

## II. ANALYSIS

Plaintiff argues that the trial court erroneously concluded that the parties did not reach an enforceable settlement agreement. We disagree.

This Court reviews a trial court's decision on a motion to enforce a settlement agreement for an abuse of discretion. *Groulx v Carlson*, 176 Mich App 484, 493; 440 NW2d 644 (1989). "An abuse of discretion occurs when the trial court's decision falls outside the range of principled outcomes." *Cox v Hartman*, 322 Mich App 292, 298; 911 NW2d 219 (2017). "An agreement to settle a pending lawsuit is a contract and is to be governed by the legal principles applicable to the construction and interpretation of contracts." *Walbridge Aldinger Co v Walcon Corp*, 207 Mich App 566, 571; 525 NW2d 489 (1994). "The existence and interpretation of a contract are questions of law reviewed de novo." *Kloian v Domino's Pizza LLC*, 273 Mich App 449, 452; 733 NW2d 766 (2006). "De-novo review means that we review the legal issue independently, without deference to the lower court." *Bowman v Walker*, 340 Mich App 420, 425; 986 NW2d 419 (2022) (quotation marks and citation omitted). The construction and application of a court rule are questions of law that are also reviewed de novo on appeal. *Kloian*, 273 Mich App at 456.

"In order to form a valid contract, there must be a meeting of the minds on all the material facts. A meeting of the minds is judged by an objective standard, looking to the express words of the parties and their visible acts, not their subjective states of mind." *Kamalnath v Mercy Mem Hosp Corp*, 194 Mich App 543, 548; 487 NW2d 499 (1992) (quotation marks and citation omitted). "Mere discussions and negotiation, including unaccepted offers, cannot be a substitute for the formal requirements of a contract." *Id*. at 549. Rather, a contract requires both an offer and acceptance of that offer. *Kloian*, 273 Mich App at 452. A party seeking enforcement of a contract bears the burden of showing the existence of the contract. *Kamalnath*, 194 Mich App at 549. "[N]o presumption will be indulged in favor of the execution of a contract since, regardless of the equities in a case, the court cannot make a contract for the parties when none exists." *Id*.

(quotation marks and citation omitted). "Unless an acceptance is unambiguous and in strict conformance with the offer, no contract is formed." *Kloian*, 273 Mich App at 452 (quotation marks and citation omitted). If a purported acceptance "includes conditions or differing terms, it is not a valid acceptance—it is a counteroffer and will not bind the parties." *Huntington Nat'l Bank v Daniel J Aronoff Living Trust*, 305 Mich App 496, 508; 853 NW2d 481 (2014).

"When a case involves an agreement to settle pending litigation, it must comply with MCR 2.507(G) to be enforceable." *Dabish v Gayar*, 343 Mich App 285, 290; 997 NW2d 463 (2022) (quotation marks and citation omitted). MCR 2.507(G) provides:

> An agreement or consent between the parties or their attorneys respecting the proceedings in an action is not binding unless it was made in open court, or unless evidence of the agreement is in writing, subscribed by the party against whom the agreement is offered or by that party's attorney.

This rule is, by its terms, "in the nature of a statute of frauds." *Kloian*, 273 Mich App at 456. And it functions "to take the guesswork out of settling a pending lawsuit." *Dabish*, 343 Mich App at 292. "Under MCR 2.507(G), the settlement must exist in a form that indisputably reflects a final agreement of the parties." *Id*. E-mails may be used to form a contract and to comply with MCR 2.507(G), provided that the e-mails evince a meeting of the minds and that the e-mails are subscribed by the party against whom the agreement is offered or the party's attorney. See, e.g., *Kloian*, 273 Mich App at 453.

In the present case, the trial court properly determined that the parties did not reach a valid settlement agreement. Ostensibly, plaintiff agreed to the proposed settlement solely as a "contingent/tentative settlement" because of "the massive Medicare lien," which plaintiff sought to have reduced by Medicare. The settlement would become binding only upon Medicare's approval of the proposed reduction. But plaintiff's *conditional* acceptance of Allstate's proposed settlement does not constitute a valid acceptance. See *Harper Bldg Co v Kaplan*, 332 Mich 651, 655; 52 NW2d 536 (1952) ("The acceptance must be absolute and unconditional, and, if conditions are attached or if it differs from the offer, the transaction amounts only to a proposal and a counter proposal.") (quotation marks and citation omitted). Cf. *Bd of Governors of Wayne State Univ v Bldg Sys Housing Corp*, 62 Mich App 77, 84-86; 233 NW2d 195 (1975) (concluding that a contract conditioned on approval by a public agency was not a valid contract). Rather, at best, plaintiff's acceptance could be construed as an acceptance that would become effective when "a certain contingency happens or fails to happen," which is sometimes referred to as "an acceptance in escrow." 2 Williston on Contracts, § 6:14 (4th ed.). See also *Bd of Governors of Wayne State Univ*, 62 Mich App at 86 n 3. However, with an acceptance in escrow, "neither party is bound and either may withdraw" before the happening of the future contingency. 2 Williston on Contracts, § 6:14 (4th ed.); see also *Harbor Park Market, Inc v Gronda*, 277 Mich App 126, 131-136; 743 NW2d 585 (2007) (holding that because the attorney-approval condition precedent in the parties' agreement was not satisfied, the underlying agreement was not enforceable, and the trial court's order mandating specific performance of that agreement was error). As applied in this matter, although plaintiff claims that Medicare approved the reduction, the documents submitted by plaintiff to support this assertion are dated August 10, 2023, *after* Allstate unequivocally withdrew its offer on July 25, 2023. In short, absent an offer and *unconditional* acceptance, Allstate

remained free to withdraw, and the trial court appropriately resolved that there was no agreement between the parties.

Further, as the continued exchange over the terms of the release demonstrates, the parties had not memorialized their agreement "in a form that indisputably reflects a final agreement of the parties" as required for a binding settlement under MCR 2.507(G). See *Dabish*, 343 Mich App at 292 ("The subsequent battling over the terms of the purported settlement that broke out . . . lays bare the danger in declaring a settlement without indisputable proof of the terms on which the parties settled."). While plaintiff claims that he accepted Allstate's offer, plaintiff's attorney never responded to Allstate's June 29, 2023 e-mail regarding the terms of the release, despite the fact that Allstate asked plaintiff's counsel to respond and to provide a signature. Absent a writing "that indisputably reflects a final agreement," the negotiation e-mails are not enforceable as a settlement agreement under MCR 2.507(G). *Id*. Accordingly, plaintiff is not entitled to relief.

Affirmed.

/s/ Matthew S. Ackerman
/s/ Mariam S. Bazzi
/s/ Andrew J. Lievense